IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                           Case No. 6:13-cr-10011-JTM-1

JESUS IBARRA-DIAZ,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on defendant Jesus Ibarra-Diaz's Motion to Vacate Sentence under 28 U.S.C. § 2255 (Dkt. 95), as well as defendant's motion to stay pending appeal (Dkt. 98). For the reasons explained below, the record conclusively shows that defendant is not entitled to relief on his § 2255 motion. Accordingly, the motion is denied without a hearing. Defendant's motion for a stay is likewise denied.

**I. Background.**

Defendant was one of three individuals charged with possession with intent to distribute 50 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii), and 18 U.S.C. § 2. Dkt. 19. The two other individuals pled guilty; defendant proceeded to trial and was convicted by a jury. Dkt. 54. Shortly thereafter, defendant filed a *pro se* motion for new trial alleging that his appointed counsel, Assistant Federal Public Defender Steven K. Gradert, had provided ineffective representation. The trial judge, the Hon. Monti L. Belot, found the allegations to be without merit, but in view of defendant's dissatisfaction, he appointed a different

attorney to represent defendant at sentencing. Dkts. 59, 60. Judge Belot subsequently sentenced defendant to 188 months imprisonment, to be followed by four years of supervised release. Dkt. 72. Defendant filed a direct appeal. While the appeal was pending, Judge Belot granted a motion to reduce the sentence to 151 months based on a retroactive change in the sentencing guidelines. Dkt. 91. The Tenth Circuit subsequently affirmed the district court's judgment and sentence. Dkt. 94.

The evidence presented at trial was as follows. *See United States v. Ibarra-Diaz*, 805 F.3d 908, 914-15 (10th Cir. 2015) (setting forth summary of evidence). An undercover detective with the Wichita Police Department received information from a confidential informant (CI) that defendant had several pounds of methamphetamine to sell. The officer provided the CI with his cell phone number and told him to set up a buy of a pound of methamphetamine from the defendant for $18,000. On January 8, 2013, the officer received a phone call from defendant's girlfriend (and co-defendant) Ana Valeriano-Trejo, who asked him if he wanted to meet up, and whether he wanted to talk to "him" first or just "be ready." The officer, who could hear a male voice in the background saying "see if he wants to talk first," replied, "Yeah, I want him to be ready." They agreed to meet at a shopping mall in thirty minutes. Valeria-Trejo indicated that "he" would be with her and they would be driving a Chevrolet Malibu.

Officers set up surveillance and the detective, who was wearing a body wire to record the transaction, waited in a parked car at the mall. About 45 minutes later, a blue Chevrolet Malibu arrived and parked next to the officer's vehicle. Defendant was driving; he was accompanied by Valeriano-Trejo and an eight month-old baby. The

officer got into the back seat of the Malibu. After Valeriano-Trejo engaged in small talk with the officer, she asked the defendant, "Where is Ricardo?" Defendant told her, "In a little bit he will bring it," and then instructed her to "call him to come over here." Valeriano-Trejo told the officer that Ricardo was "just our friend."[1]

At that point, a brown SUV arrived and parked on the other side of the detective's car. The driver, Ricardo Estrada, got out and spoke with the defendant through the open driver's side window of the Malibu. The officer couldn't fully hear what was said, but his body wire picked up the defendant telling Estrada, "Hey man, get it out and bring it in … get it and bring it in." Estrada stayed put, however, and began staring at the officer. The detective heard Estrada tell the defendant that he (the detective) was a police officer. Although the officer did not initially recognize Estrada, he later remembered he had previously tried to talk him into becoming a CI. Defendant told the detective to "go up to the car," apparently referring to the SUV, and the officer got out of the Malibu. He went to Estrada and confronted him about his statement that he was a cop, at which point defendant told Estrada he was "going over there" and began to drive away. Officers stopped the Malibu.

The detective arrested Estrada, and a search of the SUV turned up a plastic Walmart bag containing just under a pound of a methamphetamine mixture. Estrada told the detective there was an additional pound of methamphetamine at a residence he shared with defendant and defendant's girlfriend. In a subsequent interview, defendant

---

[1] Defendant's statements were apparently in Spanish. The detective is fluent in Spanish but pretended to speak only English during the transaction. Valeriano spoke to the detective in English and spoke to the defendant in Spanish.

admitted that he resided at the 46th Street house identified by Estrada, although he said he didn't own it. Officers confirmed that one of the keys from the key ring used by defendant to drive the Malibu opened the back door of the 46th Street residence.

Officers obtained a search warrant for the house and found another plastic Walmart bag containing 432 grams of a methamphetamine mixture hidden in a bucket of tile adhesive in a utility area near the kitchen. They found Saran Wrap, like that used to wrap the methamphetamine, in a trash can. They also found documents with defendant's name and picture on them. In a bedroom they found men's and women's clothing and a diaper bag containing $1440.

Laboratory tests revealed that the bag retrieved from the SUV contained 447.8 grams of a substance that was 72% pure methamphetamine (i.e., 322.41 grams of actual methamphetamine). The bag from the house contained 432.1 grams of a substance that was 79% pure methamphetamine (341.35 grams of actual methamphetamine).

The defense cross-examined the government's witnesses at trial, but the defendant did not testify and the defense presented no evidence of its own. The jury was instructed it could find the defendant guilty if the government showed beyond a reasonable doubt that on or about the date alleged, the defendant knowingly and intentionally possessed more than 50 grams of a mixture containing a detectable amount of methamphetamine, or if he knowingly aided and abetted another person in doing so. At sentencing, the trial judge found that defendant was responsible for 663.76 grams of actual methamphetamine, the sum of actual methamphetamine from both Walmart bags. The initial 188-month sentence was at the low end of the applicable

guideline range (188 to 235 months, based on an offense level of 36 and a Criminal History Category of I).

**II. Motion to vacate sentence - § 2255.**

Defendant's motion to vacate sentence alleges that his trial attorney provided ineffective representation in three respects. First, he alleges the attorney unreasonably failed to object to the duplicitous nature of the indictment, which (he contends) allowed him to be convicted on either of two separate offenses – i.e., possession of the methamphetamine in the SUV or possession of methamphetamine in the house. Dkt. 95 at 9. Second, he contends counsel should have raised the "issue in which [defendant] was classified as a principal in the present case." *Id.* at 11. Third, he contends counsel unreasonably failed to object to testimony of the detective that was "irrelevant, inflammatory, and unfairly prejudicial." *Id*. at 11.

**III. Discussion.**

A. Ineffective assistance standard. Ineffective-assistance-of-counsel claims are analyzed under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88. "This standard is extremely deferential and employs a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *United States v. Walton*, 2016 WL 4539941, at *2 (10th Cir. Aug. 30, 2016) (*citing Strickland*, 466 U.S. at 689). Second, the defendant must show that his counsel's deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 692. This means the defendant must show that there is a

5

reasonable probability that, but for his counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694. The court may dispose of a claim for ineffective assistance of counsel on either part of the *Strickland* standard, as a failure of either component is fatal to the claim. *See Walton,* 2016 WL 4539941, *2.

      B. Ground One. Defendant claims his attorney unreasonably failed to object to a duplicitous indictment, thereby raising the danger that the jury convicted him without unanimously agreeing on the basis of the conviction, in violation of the Sixth Amendment. Dkt. 95 at 10. An indictment is duplicitous if it charges two or more separate offenses in the same count. *United States v. Ibarra-Diaz*, 805 F.3d 908, 930 (10th Cir. 2015) (*citing United States v. Trammell*, 133 F.3d 1343, 1354 (10th Cir. 1988)). Although some Tenth Circuit case law suggests the charge in this case would not be considered duplicitous, there are also cases finding that possession of drugs in two different locations can constitute separate and distinct offenses. *Compare United States v. Gann*, 159 F.App'x 57, 59, 2006 WL 41221 (10th Cir. 2006) ("The law of the Tenth Circuit is clear: where two or more acts could be charged as separate counts but are part of the same scheme or course of conduct, they are not necessarily duplicitous and may be charged in one count") *with United States v. Blakeney*, 753 F.2d 152, 155 (D.C. Cir. 1985) (evidence showed "two separate and distinct possessions of marihuana" where the offenses "took place at widely separate locations and under completely different factual situations"). In this case, the court need not decide whether counsel's failure to object to the indictment was objectively unreasonable, because plaintiff's claim fails under the prejudice prong of *Strickland*.

6

The three dangers of a duplicitous indictment are: (1) a jury may convict a defendant without unanimously agreeing on the same offense; (2) a defendant may be prejudiced in a subsequent double jeopardy defense; and (3) a court may have difficulty determining the admissibility of evidence. *See United States v. Trammell*, 133 F.3d 1343, 1354 (10th Cir. 1998). Defendant cites nothing to show a reasonable possibility that he suffered such prejudice in this case. First of all, the trial judge gave a general unanimity instruction, which is ordinarily sufficient to ensure that jurors reach a unanimous agreement on the basis of their verdict. *See Manusco*, 718 F.3d at 792; *United States v. Tucker*, 434 F.App'x 355, 360, 2011 WL 3047631, *5 (5th Cir. 2011) (general unanimity instruction suffices, even where indictment alleges numerous factual bases for criminal activity, unless there is a genuine risk of juror confusion). Defendant fails to explain how the jury could have been confused. Such a danger is essentially non-existent, because the government presented overwhelming evidence showing defendant's constructive possession of both bags. Moreover, the circumstances surrounding possession of both bags would still have been admissible on a count limited to one bag, because possession of the second bag clearly showed defendant's knowledge, intent, plan, and absence of mistake with respect to the first bag. The record shows no danger of confusion of evidentiary issues. As for the risk of double jeopardy, that too is non-existent because "the entire record, not just the indictment, may be referred to in order to protect against double jeopardy if a subsequent prosecution should occur." *United States v. Edwards*, 782 F.3d 554, 563 (10th Cir. 2015) (citation omitted). Defendant is

protected against any claim of double jeopardy because examination of the record shows that the conviction was based upon both bags.

Defendant is unable to suggest any basis upon which the jury's verdict might have been different had the charge been limited to one bag or had the charges been separated into two counts. The evidence was overwhelming that defendant knowingly participated in the attempted sale at the mall - showing up with Valeriano at the prearranged buy, directing her to summon Estrada, and directing Estrada to "get it out and bring it" when he showed up with a pound of methamphetamine in his car. The government also produced essentially uncontroverted evidence that defendant was residing with Valeriano and Estrada at the house on 46th Street, where a nearly identical bag of methamphetamine was found later the same day, and where a significant amount of cash was found in a bedroom apparently shared by defendant and Valeriano. Simply put, the record shows no realistic chance that the jury did not unanimously agree on the same offense, or that the outcome of the proceeding would have been different had defense counsel objected to the charge as being duplicitous.

The same is true with respect to the sentence imposed. The statutory penalty would have been unaffected had defense counsel objected and the government had been forced to limit the charge to possession of only one bag. Possession of either bag would have carried the same 5 to 40 year statutory penalty alleged in the indictment.[2] The guideline range would also have been unaffected, because the offense level is

---

[2] The indictment charged unlawful possession with intent to distribute 50 grams or more of a mixture containing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). Dkt. 19 at 2.

determined from all "relevant conduct," whether charged or not, and the record clearly shows that possession of the two bags was part of the same course of conduct. *See e.g., United States v. Pace*, 468 F.App'x 854, 861-62, 2012 WL 955972 (10th Cir. 2012) (relevant conduct includes uncharged acts that are part of the same course of conduct or common scheme or plan as the offense of conviction). In sum, the record shows that defendant is not entitled to relief on this claim.

C. <u>Ground Two</u>. Defendant next complains that his attorney failed "to raise the … issue in which Mr. Ibarra was classified as a principal in the present case." Dkt. 95 at 11. This argument is not explained in the motion, but apparently asserts that defendant was wrongly considered a principal rather than an accessory to the crime. If so, the argument provides no grounds for relief. The defendant's legal responsibility for the offense was the same regardless of whether he was a principal or an aider and abettor. *See* 18 U.S.C. § 2 (whoever commits an offense or aids and abets its commission is punishable as a principal).

D. <u>Ground Three</u>. Defendant's final claim is that his trial attorney failed to object to testimony by the detective that "was irrelevant, inflammatory, and unfairly prejudicial, which in [turn] deprived Mr. Ibarra of a fair trial." Dkt. 95 at 11. The motion indicates this claim is based on admission of the detective's explanation of why he was scared when Estrada told the defendant that he was a cop. Defendant points out the Tenth Circuit found that "a significant portion of the detective's testimony [on that point] was irrelevant, and any probative value was likely to be substantially outweighed by the danger of confusing the issues or misleading the jury." Dkt. 95 at 12

(*quoting United States v. Ibarra-Diaz*, 805 F.3d 908, 929 (10th Cir. 2015)). But the Tenth Circuit also concluded that defendant "cannot show that [this] alleged error had any impact on his substantial rights." *Id*. The Circuit found that although the detective's statements were irrelevant, their admission was not prejudicial because they were most reasonably understood as explaining the detective's fear that Estrada, rather than the defendant, would cause him harm. *Id*. Because defendant cannot show a reasonable probability that his attorney's failure to object to this testimony made any difference in the outcome of the proceeding, his claim based upon ineffective assistance fails as a matter of law.

**IT IS THEREFORE ORDERED** this 6th day of February, 2017, that defendant's Motion to Vacate Sentence under 28 U.S.C. § 2255 (Dkt. 95) is DENIED. Defendant's Motion to Stay Pending Appeal (Dkt. 98) is DENIED as moot.

Under Rule 11 of the *Rules Governing Section 2255 Proceedings*, the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Saiz v. Ortiz*, 392 F.3d 1166,

1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)). For reasons indicated above, the court finds that defendant has not satisfied this standard. The court therefore denies a certificate of appealability as to its ruling on this motion.

                                        ___s/ J. Thomas Marten_____
                                        J. THOMAS MARTEN, JUDGE